UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAMARCUS VALENTINO BERRY ,

                Plaintiff,

v.

UNKNOWN SHAVERLIER, et al.,

                Defendants.

_____/

Case No. 1:24-cv-194

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a county jail inmate under 42 U.S.C. § 1983.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lyons, LaJoye-Young, and Kent County.  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Shaverlier and Dunham: Plaintiff's Fourteenth Amendment claims

against Defendants Shaverlier and Dunham, his Eighth Amendment claims against Defendant Dunham, and any intended claims for violation of the PREA.  The Court will serve the complaint against Defendants Shaverlier and Dunham, and the following claims remain in the case: Plaintiff's First Amendment retaliation claims against Defendants Shaverlier and Dunham and his Eighth Amendment claim against Defendant Shaverlier.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated at the Kent County Correctional Facility in Grand Rapids, Kent County, Michigan.   The events about which he complains occurred at that facility.   Plaintiff sues Deputies Unknown Shaverlier, Unknown Dunham, and Bradley Lyons, and Kent County Sheriff Michelle LaJoye-Young in their individual and official capacities.   Plaintiff also asserts an official capacity claim against Kent County.  (ECF No. 1, PageID.2.)

Plaintiff alleges that between July and December of 2022,[1] Defendant Shaverlier stopped at his cell and told Plaintiff to "play with [his] dick."  (*Id.*,

---

[1] It appears to the Court that Plaintiff pled guilty to his initial Kent County criminal charges in June of 2022, and that he was sentenced in August of 2022. Thereafter, it appears that Plaintiff was released from incarceration; it is not clear that Plaintiff would have been incarcerated in December of 2022. *See* Register of Actions, *People v. Berry*, No. 22-02540-FH (Kent Cnty. Cir. Ct.), https://www.accesskent.com/CNSearch/appStart.action (in the "First Name" box, enter "LaMarcus," in the "Last Name" box, enter "Berry," in the "Year of Birth" box, enter 1985," complete reCAPTCHA, select "Search Criminal Cases," select Case Number 22-02540-FH  enter "1953" in the second box, and enter "FH" in the third box) (last visited Mar. 25, 2024).

PageID.3.)  Defendant Shaverlier also stated, "If you don't let me see your dick I'm going to make sure your time is hard and you will miss your visits."  (*Id.*)  Later that week, Defendant Dunham told Plaintiff, "You know what Shaverlier told you so you better let me see you jack off."  (*Id.*)  Plaintiff reported these comments to an unknown mental health employee and an unknown sergeant.  Plaintiff also asked for a Prison Rape Elimination Act (PREA) grievance and submitted it to Defendant Lyons.  In the grievance Plaintiff stated that Defendants Shaverlier and Dunham were retaliating against him by making false accusations and imposing segregation, cell restrictions, and missed visits on Plaintiff.  (*Id.*)

Upon Plaintiff's return to his prior unit at some point between October and December of 2023,[2] Defendant Shaverlier came by Plaintiff's cell, and stated: "You back? Don't think your [sic] safe."  (*Id.*)  From October 2023 through December 2023, Defendants Shavalier and Dunham, and non-party officer Sutton began "to retaliate against [Plaintiff] with abuse of there [sic] power by cell restriction without . . . due process of KCCF policy on numerous occasion[s] without any form of documentation of any violation."  (*Id.*)  On December 31, 2023, Defendant Dunham forced Plaintiff

---

[2] It appears to the Court that Plaintiff was released from incarceration, but was subsequently reincarcerated, likely in June of 2023, because he violated the terms of his probation. In July of 2023, Plaintiff was sentenced for the probation violation. *See* Register of Actions, *People v. Berry*, No. 22-02540-FH (Kent Cnty. Cir. Ct.), https://www.accesskent.com/CNSearch/appStart.action (in the "First Name" box, enter "LaMarcus," in the "Last Name" box, enter "Berry," in the "Year of Birth" box, enter 1985," complete reCAPTCHA, select "Search Criminal Cases," select Case Number 22-02540-FH  enter "1953" in the second box, and enter "FH" in the third box) (last visited Mar. 25, 2024). As such, at this stage of the proceedings, it appears to the Court that during the time periods relevant to the present complaint, Plaintiff was a convicted prisoner, rather than a pretrial detainee.

to take a food tray that contained soy even though Defendant Dunham knew that Plaintiff is allergic to soy.  Plaintiff stated that he would write a grievance, and Defendant Dunham sent him to segregation.  Plaintiff still did not receive his food tray.  Plaintiff wrote a grievance and states that non-party Lieutenant Pieberga and Defendant Lyons "covered for" Defendant Dunham's retaliation and denial of three meals.  (*Id.*)

On January 17, 2024, non-party Deputy Sutton stopped at Plaintiff's cell and told Plaintiff's cellmate to pack up his belongings because he was going to segregation.  Five minutes later, Defendant Shaverlier and non-party Deputy Rowan came to the cell and told Plaintiff that he was also going to segregation.  When the cell door opened, Defendant Shaverlier searched Plaintiff, grabbing his penis and sliding his fingers into Plaintiff's anus.  (*Id.*) P laintiff jumped and yelled that he was being sexually assaulted, but Defendant Shaverlier just smiled at Plaintiff.  While walking to segregation, Plaintiff told an unknown sergeant that he needed to report a sexual assault.  Later that day, Plaintiff told non-party mental health worker Carolyn about the assault.  Plaintiff subsequently requested a PREA grievance from non-party Sergeant Hernandez, but Hernandez did not give Plaintiff a grievance form.  (*Id.*)

Plaintiff asserts that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments.  Plaintiff also asserts that Defendants violated the "federal PREA standard."  (*Id.*)  Plaintiff seeks damages and injunctive relief.

## II.       Motion for Order to Submit Exhibits

Initially, the Court notes that Plaintiff has filed a motion for order to submit exhibits in support of his complaint.  (ECF No. 4.)  Plaintiff seeks to file copies of a January 3, 2024, grievance, the initial response by Lieutenant Piebenga, Plaintiff's appeal, and response to that appeal by Defendant Lyons.  (*Id.*, PageID.12-15.) Because Defendants have not yet been served in this case, Plaintiff may amend his pleading once as a matter of course.  Fed. R. Civ. P. 15(a)(1)(A).  Therefore, Plaintiff's motion for order to submit exhibits in support of his complaint (ECF No. 4) will be granted.

## III.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Defendant Kent County

Plaintiff sues Kent County. (ECF No. 1, PageID.2.) A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial

determination to be made. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996), *abrogated on other grounds by Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274 (1998), *as stated in Phillips v. Anderson Cnty. Bd. of Educ.,* 2006 WL 3759893 (E.D. Tenn. Dec. 19, 2006); *see also Craig v. Lima City Sch. Bd. of Educ.,* 384 F.Supp.2d 1136 (N.D. Ohio 2005). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy or custom to the governmental entity and show that the particular injury was incurred because of the execution of that policy or custom. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff's allegations against Kent County essentially rest on a theory of vicarious liability and therefore do not state a claim. Plaintiff does not assert that Defendants Shaverlier, Dunham, and Lyons acted in accordance with a policy which caused injury to Plaintiff. And, to the extent that Plaintiff suggests the existence of a custom regarding the alleged wrongdoing by Defendants, his allegations are wholly

conclusory.  To show that a governmental entity has an unlawful custom, a plaintiff must show the existence of "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Plaintiff's allegations do not show a widespread pattern.  Further, to the extent that Plaintiff intended to suggest such a pattern, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (2007).

Where a plaintiff fails to allege that the existence of a policy or custom caused his injuries, dismissal of the action for failure to state a claim is appropriate.  *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).  Therefore, the Court will dismiss Plaintiff's claims against Defendant Kent County.

### B.    Defendant LaJoye-Young

With respect to Defendant LaJoye-Young, Plaintiff fails to make any allegations with regard to Defendant LaJoye-Young.  When listing the Defendants named in this action, Plaintiff lists Defendant LaJoye-Young as a Defendant, however, Plaintiff fails to name Defendant Defendant LaJoye-Young in the body of his complaint.  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege

how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Plaintiff's claims against Defendant LaJoye-Young, therefore, fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Furthermore, to the extent that Plaintiff seeks to hold Defendant LaJoye-Young liable for the actions of her subordinates, government officials, such as Defendant LaJoye-Young, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant LaJoye-Young encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct.  Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendant LaJoye-Young was personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege Defendant LaJoye-Young engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against Defendant LaJoye-Young.

Accordingly, for the reasons set forth above, Plaintiff's claims against Defendant LaJoye-Young will be dismissed.

C. **Defendant Lyons**

Plaintiff's claims against Defendant Lyons are entirely conclusory. The sum of Plaintiff's allegations are (i) that he submitted a PREA grievance to Defendant Lyons in 2022, and (ii) that Plaintiff wrote a grievance about Defendant Dunham's actions on December 31, 2023, in which Dunham provided Plaintiff with a tray with soy (despite Plaintiff's soy allergy) and then sent Plaintiff to segregation, resulting in Plaintiff not receiving his food tray, and that Defendant Lyons in an unspecified way "covered for" Defendant Dunham's retaliation and denial of three meals. (ECF No. 1, PageID.3.)

As an initial matter, with respect to the PREA grievance that Plaintiff submitted to Defendant Lyons in 2022, Plaintiff does not allege any facts about Defendant Lyons's actions after Plaintiff submitted the PREA grievance or about the outcome of the grievance. Under these circumstances, the Court fails to discern how Defendant Lyons's receipt of the PREA grievance on its own violated Plaintiff's constitutional rights.

Further, with respect to Plaintiff's conclusory allegation that Defendant Lyons "covered for" Defendant Dunham after Plaintiff submitted a grievance regarding Defendant Dunham's actions in December of 2023, Plaintiff fails to allege any *facts* about how Defendant Lyons "covered for" Defendant Dunham. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Moreover, § 1983 liability may not be imposed simply because a supervisor denied an

11

administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300.

Here, Plaintiff fails to allege facts describing how Defendant Lyons "covered for" Defendant Dunham.  And, Plaintiff fails to allege any facts suggesting that Defendant Lyons was personally involved in the alleged violation of Plaintiff's constitutional rights in any other way.  *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly for these reasons, the Court will dismiss Defendant Lyons from this action.

### D.    Fourteenth Amendment

Plaintiff alleges that Defendants Shaverlier and Dunham violated the Fourteenth Amendment by placing him on cell restriction without due process on several occasions.  (ECF No. 1, PageID.3.)

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486–87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790–91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484-86. Similarly, the Sixth Circuit has held that

mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g., Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Plaintiff contends that he was placed in administrative segregation on two occasions: at some point between June 2022 and December 2022 and in December of 2023. Plaintiff makes no specific allegations regarding the duration of his placement in segregation on each occasion. Plaintiff has failed to make any allegations which support a finding that his segregation was "atypical and significant." Nor does Plaintiff specifically allege facts showing the nature of "restrictions" imposed.

14

Plaintiff's conclusory and vague allegations are insufficient to state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Consequently, the court concludes that no liberty interest is implicated by Plaintiff's allegations. The Court will dismiss Plaintiff's due process claims.

### E.     First Amendment

Plaintiff contends that Defendants Shaverlier and Dunham retaliated against Plaintiff. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that Defendants Shaverlier and Dunham took a number of adverse actions against him in retaliation for Plaintiff engaging in protected conduct, such as making verbal complaints and submitting written grievances. Although Plaintiff has by no means proven his retaliation claims, at this stage of the proceedings, the Court will not dismiss Plaintiff's First Amendment retaliation claims against Defendants Shaverlier and Dunham.

F.     **Eighth Amendment**

Plaintiff alleges that Defendants Shaverlier and Dunham violated his rights under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."

16

*Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).   The deliberate-indifference standard includes both objective and subjective components.  *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.

### 1.  Defendant Shaverlier

Plaintiff alleges that Defendant Shaverlier subjected him to verbal sexual harassment and on January 17, 2024, sexually assaulted Plaintiff.  "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain'" forbidden by the Eighth Amendment.

*Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

At this stage of the proceedings, Plaintiff's factual allegations must be taken as true. Although Plaintiff has by no means proven his Eighth Amendment claim against Defendant Shaverlier, the Court will not dismiss this claim on initial review.

### 2. Defendant Dunham

Plaintiff alleges that on one occasion, Defendant Dunham told Plaintiff that he had better let him see Plaintiff "jack off." Plaintiff does not indicate that he acted on this request, and he does not allege that Defendant Dunham ever touched Plaintiff in a sexual manner or made other sexual comments toward Plaintiff.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the United States Court of Appeals for the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey*, 832 F.2d at 954–55; *see also Johnson v.*

18

*Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

The Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Rafferty*, 915 F.3d at 1095; *Violett*, 76 F. App'x at 27 (an offer of sexual favors is not sufficient to state Eighth Amendment claim); *Johnson v. Ward,* No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse].").

In contrast, repeated and extreme incidents may sufficiently state a claim.  For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying.  *Rafferty*, 915 F.3d at 1095–96.  The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse.  *Id.* at 1096.

Under the circumstances alleged by Plaintiff, Defendant Dunham's verbal remark, which was made on one occasion, while offensive and unprofessional, does not evidence the sort of coercive sexual demand at issue in *Rafferty*. *See Rafferty*, 915 F.3d at 1095–96. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Dunham regarding this verbal remark will be dismissed.

Plaintiff also claims that Defendant Dunham attempted to give him a tray containing soy when Dunham knew that Plaintiff was allergic, and that Dunham ultimately denied Plaintiff three meals. "The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food . . . ." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days,

and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim). The Court notes that Plaintiff's allegations regarding the missing meals are largely conclusory. Plaintiff does not allege facts showing whether the missed meals were consecutive, or if they were spread over two or more days. Consequently, Plaintiff's allegation that he was denied three meals falls short of stating a claim under the objective prong of the deliberate-indifference standard. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

Therefore, for the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendant Dunham are properly dismissed.

## G.   Violation of PREA

Plaintiff claims that Defendants violated the "federal PREA standard"; however, Plaintiff cannot maintain such a claim. Plaintiff "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not

create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))). Accordingly, any intended claims for violation of the PREA will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Lyons, LaJoye-Young, and Kent County will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Shaverlier and Dunham: Plaintiff's Fourteenth Amendment claims against Defendants Shaverlier and Dunham, his Eighth Amendment claims against Defendant Dunham, and any intended claims for violation of the PREA. Plaintiff's First Amendment retaliation claims against Defendants Shaverlier and Dunham and his Eighth Amendment claim against Defendant Shaverlier remain in the case. The Court will serve the complaint against Defendants Shaverlier and Dunham.

An order consistent with this opinion will be entered.


Dated:  __April 8, 2024__              __/s/ Phillip J. Green__
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge